UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **ERNEST WALKER JOHNSON,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**KILOLO KIJAKAZI, Acting** )<br>**Commissioner of the Social Security** )<br>**Administration,** )<br>)<br>**Defendant.** )<br>) | Civil Action Number<br>**4:21-cv-00139-AKK** |

## MEMORANDUM OPINION

Ernest Johnson seeks review of the final decision of the Acting Commissioner of the Social Security Administration, contending that the Administrative Law Judge's decision denying benefits was not supported by substantial evidence. Doc. 1. Johnson argues that the ALJ erred by summarily discounting the opinions of two physicians. *See* doc. 15. However, the court must affirm the ALJ's decision because substantial evidence in Johnson's medical record supports the ALJ's decision to give these opinions little weight, as the ALJ articulated.

### I.

Johnson, a former truck driver and current school-bus driver, filed for disability benefits in June 2016 based on degenerative disc and joint disease, right groin/hamstring muscle strain, hypertension, carpal tunnel syndrome, hearing loss with tinnitus, and obesity. Doc. 15 at 1; R. 30. After the SSA denied his application,

Johnson appeared before an ALJ, who concluded that Johnson was not disabled. Doc. 16 at 2; R. 186. The Appeals Council vacated this decision and remanded the case for further consideration of Johnson's residual functional capacity and past work. R. 207. A second ALJ held a hearing with Johnson, his attorney, and a vocational expert and also found that Johnson was not disabled. R. 24; R. 27. The Appeals Council denied review, R. 1, and the ALJ's decision became the final decision of the Acting Commissioner. Johnson now petitions for review. Doc. 1.

## II.

On review, the court may decide only whether the record contains substantial evidence to support the ALJ's decision and the ALJ applied the correct legal principles. 42 U.S.C. § 405(g); *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020). Courts review de novo the legal conclusions upon which the Commissioner's decision is based, while the Commissioner's factual findings are conclusive if supported by "substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* This threshold "is not high," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), and requires "less than a preponderance," *Moore*, 405 F.3d at 1211. Thus, if substantial evidence supports the factual findings, the court must affirm, even if the evidence preponderates against them. *Noble*, 963 F.3d at 1323.

When determining whether substantial evidence exists, the court cannot decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. *Id.*; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court also cannot automatically affirm the decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Rather, the court "retain[s] an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable." *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

## III.

The Social Security Act "places a very heavy initial burden on the claimant" to establish disability—a "stringent burden that has been characterized as bordering on the unrealistic." *Bloodsworth*, 703 F.2d at 1240 (collecting cases). To qualify for benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1). Determinations of disability require a five-step analysis in which the ALJ determines:

(1) whether the claimant is currently unemployed;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or equals one listed by the Commissioner;

3

(4) whether the claimant is unable to perform his or her past work; and
(5) whether the claimant is unable to perform any work in the national economy.

20 C.F.R. § 404.1520(a); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).[1]

For claims filed prior to March 27, 2017, ALJs must give a treating physician's medical opinion considerable weight subject to certain parameters. *See* 20 C.F.R. § 404.1527(c). As a general matter, the ALJ "will evaluate every medical opinion [he or she] receive[s]," *id.*, and "give more weight to medical opinions from [a claimant's] treating sources."[2] *Id.* § 404.1527(c)(2). If the ALJ finds that a treating source's opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic

---

[1] If a claimant's impairments do not meet or equal a listed impairment, the ALJ determines the claimant's "residual functional capacity" on the basis of "all of the relevant medical and other evidence" in the claimant's case record. 20 C.F.R. § 404.1520(e). *See also* 20 C.F.R. § 404.1545(a)(1) ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations."). The ALJ uses the residual functional capacity at Step Four to determine if the claimant can perform past relevant work and at Step Five to determine if the claimant can adjust to other work. 20 C.F.R. § 404.1520(e).

[2] A "treating source" is "[an] acceptable medical source" who provides or has provided the claimant "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Id.* § 404.1527(a)(2).

4

techniques and is not inconsistent with the other substantial evidence in [the] case record," the ALJ will give it "controlling weight." *Id.* Under these regulations, "a treating physician's conclusions must be given 'substantial or considerable weight' unless there is 'good cause' to discount them," where good cause means that the physician's opinion "was not bolstered by the evidence," "evidence supported a contrary finding," or the opinion "was conclusory or inconsistent with the doctor's own medical records." *Simon*, 7 F.4th at 1104. "While an ALJ may choose to reject a treating physician's findings when there is good cause, he [or she] must clearly articulate [the] reasons for doing so." *Id.* (internal quotation marks omitted).[3]

When a claimant seeks to establish a disability through her own testimony concerning pain or subjective symptoms, the ALJ evaluates whether there exists "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, the ALJ must "articulate explicit and adequate reasons for doing so," and the failure to articulate the reasons for discrediting subjective

---

[3] By contrast, for claims filed on or after March 27, 2017, the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

testimony "requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1998)).

Finally, if the record shows the claimant has a "medically determinable impairment that could reasonably be expected to produce her symptoms," the ALJ must assess the "intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." *Costigan v. Comm'r of Soc. Sec.*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)). The ALJ must consider "all of the record," including the objective medical evidence, the claimant's history, and statements of the claimant and the claimant's doctors, and the ALJ may consider factors like the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of the claimant's medication; and treatments other than medication. *Id.* Last, the ALJ must examine the claimant's symptom-related testimony in relation to all of the other evidence, considering whether there are any "inconsistencies or conflicts between those statements and the record." *Id.*

## IV.

At Step One, the ALJ determined that Johnson had engaged in substantial gainful activity after his onset date but had at least 12 consecutive months without substantial gainful activity since then. R. 29. The ALJ thus made findings as to the

periods Johnson did not engage in substantial gainful activity. R. 30. At Step Two, the ALJ found that Johnson suffered from the severe impairments of degenerative disc and joint disease, right groin/hamstring muscle strain, hypertension, carpal tunnel syndrome, hearing loss with tinnitus, and obesity and the nonsevere impairments of atrial fibrillation and ventricular premature depolarization. *Id.* At Step Three, the ALJ concluded that Johnson's impairments did not meet or medically equal a listed impairment singly or in combination. *See* R. 30–31.

The ALJ proceeded to Johnson's medical records and testimony to ascertain his residual functional capacity. First, the ALJ turned to Johnson's disability and work-history reports. *See* R. 31. Johnson wrote that he suffered constant pain from an injury to his right groin and constant pain in his right hip and that he could not lift his right leg or stand or sit for more than 30 minutes. R. 429. Johnson also reported that he worked as a regional truck driver from 2012 to mid-2015, stopped working for several months, transitioned to clerical work for a few months, and then stopped working again in November 2015. R. 430; R. 444. He also reported that he took ibuprofen and a muscle relaxer for pain and inflammation. R. 431. The ALJ also looked to Johnson's self-report, in which Johnson wrote that his pain came and went throughout the day regardless of his medications and other treatments. R. 31; R. 437. As the ALJ noted, R. 31–32, Johnson reported that his pain affected his abilities to dress, bathe, stand, shave, lift, squat, bend, reach, walk, sit, kneel, and

climb stairs, R. 437–41, but that he could read, prepare breakfast, perform chores, care for his child, manage his finances, drive, and shop for groceries, R. 436–39.

The ALJ then reviewed Johnson's most recent hearing testimony. R. 32. Johnson testified that in November 2015 he fell at work and suffered an injury to his groin and lower back. R. 123–24. He explained that since then, he experienced degenerative changes in his hip and had injections to treat these issues. R. 124. Johnson also testified that he had some hearing loss, received a hearing device, had carpal tunnel syndrome and numbness in his fingers, wore a wrist brace, and had painful degenerative changes in his knees. R. 124–25. He testified that an epidural in 2019 helped him "deal with the pain" but did not provide lasting relief. R. 125. Johnson and the ALJ also discussed Johnson's weight and cardiovascular issues. *See* R. 126. Together, Johnson asserted, these issues made it difficult for him to sit down or move around for 10 to 30 minutes at a time and to lift items off the floor. *See* R. 127–28. Johnson also stated that his injuries prevented him from working as a truck driver but that he continued to work as a school-bus driver. *See id.* The ALJ subsequently evaluated this testimony with the other evidence in the record. Given the length of the record, the court summarizes the evidence most relevant to Johnson's appeal.[4]

---

[4] Johnson claimed disability in part based on hearing and cardiovascular issues, documented, for example, in visits to Dr. Stephen Favrot and Dr. Stephanie Baj. *See* R. 35. However, Johnson challenges the ALJ's findings only with respect to Dr. Dallas Russell and Dr. Charles Lambert,

In September and October 2015, Johnson visited an orthopedist, Dr. Thomas Powell, for pain in his right hip. R. 621–23. Dr. Thomas Powell wrote that the exam "reveal[ed] a pleasant gentleman in no apparent distress" with "tenderness to palpation in the groin albeit mild and . . . pain on internal and external rotation of the right hip" and "difficulty with hip flexion on the right in a sitting position." R. 621. A right-hip X-ray "show[ed] no evidence of fracture or dislocation," and Dr. Thomas Powell recommended six weeks of therapy and rest before a follow-up. *Id.* At the follow-up, Dr. Thomas Powell recorded continuing pain and made a referral for a possible hip arthroscopy. R. 623.

In November 2015, Dr. Charles Lambert filled out a "voluntary benefits disability claim form" for Johnson in which Dr. Lambert noted "sprain/strain hip/thigh" and a secondary diagnosis of "rupture muscle" and "strain of RT Inguinal." R. 735. Dr. Lambert wrote that he advised Johnson to return to light work without heavy lifting, standing, walking, or driving a commercial vehicle. R. 734. Dr. Lambert also recorded a treatment plan of physical therapy at least three times per week and indicated that Johnson could occasionally sit and stand; frequently walk and reach above shoulder level; and never climb, twist/bend/stoop, or operate heavy machinery. R. 733.

---

who opined as to Johnson's knee, back, and other musculoskeletal-related issues. Thus, the court does not summarize the medical records addressing Johnson's other symptoms.

In August 2016, Johnson visited UAB Medicine for right-hip pain that radiated to his knee and was worse with activity and better with rest. *See* R. 649. Dr. Stephen Gould noted that Johnson had some limitations in his range of motion and would continue his medications as needed and receive a hip injection. R. 651. The doctor also noted a "fracture or dislocation," that "[t]he femoral heads [were] well-seated within the acetabula without appreciable degenerative arthrosis," and that there were "[m]oderate discogenic degenerative changes" without soft tissue abnormality. R. 652. In September 2016, Dr. Sara Gould referred Johnson to pool therapy. R. 653.

The same month, Johnson visited Dr. Danielle Powell at UAB's rehabilitation clinic, where he complained of pain in his back and legs. R. 687. Dr. Danielle Powell recorded "[m]ild tenderness to palpation" and wrote that Johnson would "perform exercises in his pool to help alleviate his pain." R. 691. Johnson was referred to a free physical-therapy clinic for a home-exercise program and "[would] call back when he [was] approved [for] Charity Care to get imaging" of his spine. *Id.* Dr. Sara Gould reported tenderness and limited range of motion, for which Johnson received an injection and "reported significant relief." R. 693–94.

Later in 2017, Johnson visited Dr. Dallas Russell for a disability determination. *See* R. 714. Dr. Russell gave Johnson a physical exam and reported that Johnson had "abnormal" range of motion in his left knee, mild swelling in his

fingers, "abnormal" range of motion in his back without tenderness, a negative straight leg raise test, and no difficulty in getting off and on the exam table. R. 716–17. Dr. Russell wrote that Johnson could not squat, heel/toe walk, or tandem walk and that Johnson had sensory loss in his hands. R. 717. Dr. Russell diagnosed Johnson with a herniated disc and bulging disc, right groin region discomfort, right hip region pain, bilateral carpal tunnel syndrome, left knee difficulties, probable left cervical radiculopathy, hypertension, tinnitus, hearing loss, irregular heart rate, acid reflux, and swelling and probable arthritis of the fingers. R. 717–18.

In October 2018, Johnson visited Dr. Karl Hofammann complaining of pain in his knees. *See* R. 736. The exam revealed no swelling, ecchymosis, or deformity in either knee, and palpation indicated no tenderness but "[m]ild patellofemoral crepitation" in his right knee and "some medial joint line tenderness" in his left. *Id.* Dr. Hofammann recorded full range of motion, "5/5" strength testing, and normal reflexes and wrote that Johnson had "bone-on-bone of the medial compartment left knee with minimal narrowing of the medial compartment of the right knee" and "perhaps right patellofemoral joint space narrowing of a minimal nature." R. 737. Dr. Hofammann recommended "start[ing] with cortisone injections," followed by medicine and "replacement . . . as a last alternative" because "[t]he left knee [was] getting very close [to] requiring knee replacement of [sic] the decision will be based on his pain rather than the radiographic appearance." *Id.*

In early 2019, Johnson went to Dr. Ryan Buckner for imaging. R. 766. Findings indicated "normal renal and soft tissue uptake," "[d]egenerative uptake in the shoulders," "patellofemoral joint uptake involving the right knee [and] multi compartment uptake involving the left knee," and "[m]ild midfoot degenerative type uptake and degenerative type uptake in the right great toe." *Id.* The report stated that "[n]o suspicious osseous uptake [was] identified" but that "[t]here [was] some nonspecific right facial uptake." *Id.* As to Johnson's lower back, the MRI revealed "no fracture, compression deformity or evidence for infiltrative marrow process," and other results came back "normal" or "within normal limits." R. 768. Dr. Buckner also noted "mild disc bulging." *Id.*

Johnson returned to Dr. Hofammann in February 2019 with "no definite improvement" and "no new problems or positive findings." *See* R. 771–74; R. 792. Through May 2019, Johnson also visited RMC Mediplex, where Dr. Arden Aylor reported Johnson "need[ed] knee replacement – but ortho want[ed] to wait," and Johnson received a chronic pain handout and a knee brace. R. 810–13. In June 2019, Johnson saw Dr. Kenneth Bramlett, who wrote that Johnson's pelvis X-rays "[were] normal," that his knees "showed advanced arthritic changes," and that his left knee in particular "[was] horrible with a varus deformity, hypertrophic changes." R. 868. Throughout 2019, Johnson also saw Dr. Morton Rickless and Dr. Hubert Rodriguez for steroid injections and medication. *See, e.g.*, R. 870–74; R. 887. In

12

mid-2019, Dr. Kevin Do recommended "surgical evaluation" for Johnson's "severe bilateral Carpal Tunnel Syndrome." R. 876.

After discussing this evidence, the ALJ "assigned little weight" to Dr. Russell's opinion about Johnson's limitations regarding his back issues, carpal tunnel, and range of motion. R. 35. The ALJ noted that Dr. Russell's "own findings showed no evidence of tenderness, spasms, or deformity of the spine," that Johnson "had no lower extremity edema" and had a "negative straight leg raise," and that Johnson had maintained "normal grip strength." *Id.* Accordingly, the ALJ found that Dr. Russell's opinion "was inconsistent with his own examination findings, as well as inconsistent with [Johnson's] ability to sustain work as a bus driver for years." *Id.* The ALJ also "assigned little weight" to Dr. Lambert's opinions, which indicated that Johnson "would be limited to less than a full range of sedentary work and that [Johnson] would be unable to work with his hip condition." *Id.* The ALJ explained that Dr. Lambert's opinions were "inconsistent with most of his own objective findings" and "remarkably inconsistent with [Johnson's] ability to sustain work that he has been doing as a bus driver for years, a medium exertional level job involving commercial driving." R. 36.

The ALJ determined that Johnson had the residual functional capacity to perform "medium work" with additional limitations. R. 31. The ALJ explained that Johnson could frequently stoop and finger with the right upper extremity; could

13

occasionally climb, kneel, and crouch; and had to avoid very loud noises. *Id.* At Step Four, the ALJ found that Johnson could perform his past work as a school-bus driver and as a tractor-trailer truck driver, as both jobs constituted "medium, semi-skilled work." R. 36. Alternatively, at Step Five, the ALJ determined that Johnson could perform the jobs of laundry worker or food service worker. R. 37–38. As a result, the ALJ found that Johnson was not disabled. R. 38.

## V.

Johnson contends that the ALJ "summarily rejected the opinions of [Dr. Russell and Dr. Lambert], without sufficient legal explanation." Doc. 15 at 18–19. However, the record and the ALJ's decision contradict this claim, a fact Johnson's brief itself makes clear. Indeed, Johnson quotes at length the sections of the ALJ's opinion that clearly articulate the reasons for discounting the testimony of these two doctors. The ALJ assigned little weight to Dr. Russell's opinion because it was inconsistent with his findings that Johnson had no tenderness, spasms, or deformity of the spine and had a negative straight leg raise despite limited motion in his back, *id.* at 18, and assigned little weight to Dr. Lambert's opinion because it contradicted his findings and the evidence about Johnson's ability to perform some sedentary work and his sustained work as a bus driver, *id.* at 19. The ALJ accurately summarized the evidence, which Johnson does not appear to dispute. Nor does

Johnson identify which aspects of the ALJ's rationale were legally insufficient.[5] Thus, the ALJ properly discounted the doctors' opinions by finding that they "[were] not bolstered by the evidence" and "[were] conclusory or inconsistent with the doctor[s'] own medical records." *See Simon*, 7 F.4th at 1104.

Unfortunately, beyond cursorily stating that "[t]he doctor's opinion in this case is well supported by clinical and laboratory findings, and not inconsistent with other substantial evidence," doc. 15 at 20, Johnson makes no specific arguments to support his position. Further, over a month after filing Johnson's reply, counsel filed a "Supplemental Authority in Support of Disability" which is not supplemental authority but actually an additional brief containing case citations and limited argument. *See generally* doc. 18 (describing the relationship between the Eleventh Circuit's "treating physician rule" and the SSA's most recent treating-source regulations, which do not apply to claims filed before March 27, 2017).[6] The filing

---

[5] In his reply, Johnson alleges for the first time that the ALJ "wrongly relied significantly on [Johnson's] part time work as a school bus driver." Doc. 17 at 3. However, Johnson cannot raise an issue in his reply that he did not mention in his initial brief. *Cf. Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1210–11 (11th Cir. 2015). Additionally, the ALJ did not rely "significantly" on Johnson's work as a bus driver; rather, the ALJ noted Johnson's work as it pertained to his daily activities and other reported abilities and used this evidence, in tandem with other medical findings, to discount the physicians' opinions. *See also Moore*, 405 F.3d at 1212 ("The ALJ found [Dr. Pardo's] opinion deficient because it failed to account for Moore's diverse daily activities, or to give any specific assessment of Moore's functional capacity or explanation of how it bore on Dr. Pardo's conclusion that Moore could not work. . . . Where our limited review precludes re-weighing the evidence anew, and as the ALJ articulated specific reasons for failing to give Dr. Pardo's opinion controlling weight, we find no reversible error.") (internal citation omitted).

[6] *See also Simon*, 7 F.4th at 1104 n.4 ("Because Simon filed his claim in March of 2015, we need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to

15

was improper. Moreover, the brief is seven pages of block quotes of tangentially related case law that counsel could have included in the initial briefing and, even worse, misconstrues.[7] Counsel has also filed extremely similar or virtually identical "supplemental authority" briefs in other recent Social Security appeals, inviting skepticism about whether they are tailored to the arguments the claimants are making in those cases.[8] For these reasons, the court rejects the arguments in the additional brief.[9]

## VI.

In sum, the ALJ's decision, in which the ALJ discounted the opinions of the two doctors at issue, is supported by substantial evidence and due to be affirmed. The court will enter a separate order.

---

give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise.") (citing 20 C.F.R. § 404.1520c).

[7] *See, e.g.*, doc. 18 at 5 (contending that the undersigned's opinion in *Venable v. Kijakazi*, No. 4:20-cv-01741-AKK, 2021 WL 4894611 (N.D. Ala. Oct. 20, 2021), relied on *Simon*, 7 F.4th 1094, to remand and reverse a denial of benefits, which misrepresents the extent of the opinion's application of *Simon*).

[8] *See, e.g.*, doc. 18 in *Morgan v. Soc. Sec. Admin., Comm'r*, No. 4:20-cv-02029-AKK; doc. 25 in *Jenkins v. Soc. Sec. Admin., Comm'r*, No. 4:20-cv-00995-LSC.

[9] Clients deserve and lawyers should provide zealous advocacy. But lawyers must do this within the limits of court orders. After all, "[a] district court has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009). Key tools courts use to manage dockets include briefing schedules and page limits. Filing additional briefs without asking leave of the court indicates that the party in question has no regard for the court's docket or its orders. The court places counsel on notice that future filings like this will lead to a show cause order and, if warranted, sanctions against him.

**DONE** the 18th day of March, 2022.

                                                                                   */s/ Abdul K. Kallon*
                                                                             **ABDUL K. KALLON**
                                                          UNITED STATES DISTRICT JUDGE